No. 26-5655

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

IN RE: REALPAGE, INC., RENTAL SOFTWARE ANTITRUST LITIGATION (NO. II)

JASON GOLDMAN, *ET AL.*, *Plaintiffs- Appellees*,

v.

ALLIED ORION GROUP, LLC, *ET AL.*, *Defendants-Appellees*,

ATTORNEYS GENERAL OF THE DISTRICT OF COLUMBIA, KENTUCKY, MARYLAND, NEW JERSEY, AND WASHINGTON, *Interested Parties-Appellants*.

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

# BRIEF FOR TEXAS, TENNESSEE, AND 23 OTHER STATES AS AMICI CURIAE IN SUPPORT OF APPELLANTS

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

WILLIAM D. WASSDORF
Deputy Attorney General
for Civil Litigation

THOMAS D. YORK
Chief, Antitrust Division

KATHERINE S. DANNENMAIER
Assistant Attorney General

Texas Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 803-6803

*Counsel for Amici States*

JONATHAN SKRMETTI
Attorney General

MADELINE W. CLARK
Solicitor General

DAVID MCDOWELL
Deputy Attorney General

Office of the Tennessee Attorney General and Reporter
P.O. Box 20207
Nashville, Tennessee 37202
Telephone: (615) 253-0144
Madeline.Clark@ag.tn.gov

*Counsel for Amici States*

*(additional counsel listed after signature block)*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iii

INTRODUCTION AND SUMMARY OF THE ARGUMENT .......... 1

INTERESTS OF AMICI CURIAE .......... 4

ARGUMENT .......... 5

I. States' Sherman Act *parens patriae* claims cannot be extinguished by private parties. .......... 5

A. States' Sherman Act *parens patriae* claims are grounded in quasi-sovereign interests and therefore cannot be extinguished by private class settlements. .......... 5

B. Sherman Act *parens patriae* claims for injunctive relief cannot be extinguished by private parties. .......... 7

C. Sherman Act *parens patriae* claims for monetary relief cannot be extinguished by private parties. .......... 8

D. The cases relied upon by the district court do not address *parens patriae* claims. .......... 12

II. Courts contemplating an injunction of state-law claims must undertake a state-law-remedy by state-law-remedy analysis. .......... 14

III. Permitting private parties to extinguish States' *parens patriae* claims weakens antitrust enforcement and ultimately harms consumers. .......... 17

CONCLUSION .......... 19

CERTIFICATE OF COMPLIANCE .......... 23

## TABLE OF AUTHORITIES

### Cases

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
458 U.S. 592 (1982) .......... *passim*

*California v. IntelliGender, LLC*,
771 F.3d 1169 (9th Cir. 2014) .......... 3, 13, 15

*Connecticut v. Sandoz, Inc.*,
820 F. Supp. 3d 125 (D. Conn. 2026) .......... 15

*E.E.O.C. v. Frank's Nursery & Crafts, Inc.*,
177 F.3d 448 (6th Cir. 1999) .......... 16

*Esslinger v. HSBC Bank Nev., N.A.*,
2012 WL 5866074 (E.D. Pa. Nov. 20, 2012) .......... 13

*Georgia v. Pennsylvania Railroad*,
324 U.S. 439 (1945) .......... 6

*Grainger v. Ottawa County*,
90 F.4th 507 (6th Cir. 2024) .......... 17

*Harrison v. Jefferson Par. Sch. Bd.*,
78 F.4th 765 (5th Cir. 2023) .......... 5

*Hawaii v. Standard Oil Co. of California*,
405 U.S. 251 (1972) .......... 3, 7

*Illinois v. Abbott & Assocs, Inc.*,
460 U.S. 557 (1983) .......... 4, 17, 18

*In re Am. Invs. Life Ins. Co. Annuity Mktg. & Sales Pracs. Litig.*,
2013 WL 3463503 (E.D. Pa. July 10, 2013) .......... 13

*In re American Investors Life Insurance Co. Annuity Marketing & Sales Practices Litig.*
263 F.R.D. 226 (E.D. Pa. 2009)....................13

*In re Baldwin-United Corp.*,
770 F.2d 328 (2d Cir. 1985)....................13

*In re Elec. Books Antitrust Litig.*,
14 F. Supp. 3d 525 (S.D.N.Y. 2014) ....................4, 7

*In re Generic Pharms. Pricing Antitrust Litig.*,
2025 WL 2777570 (E.D. Pa. Sep. 26, 2025) ....................13

*In re Nat'l Prescription Opiate Litig.*,
976 F.3d 664 (6th Cir. 2020) ....................11

*New Mexico ex rel. King v. Cap. One Bank (USA) N.A.*,
980 F. Supp. 2d 1346 (D.N.M. 2013)....................13

*New York v. Microsoft Corp.*,
209 F. Supp. 2d 132 (D.D.C. 2002)....................4, 7

*Nielsen v. Preap*,
586 U.S. 392 (2019)....................11

*Pulsifer v. United States*,
601 U.S. 124 (2024).................... 10, 11

*Sec. & Exch. Comm'n v. Jarkesy*,
603 U.S. 109 (2024)....................15

*Texas v. Google LLC*,
764 F. Supp. 3d 500 (E.D. Tex. 2025).................... 4, 7, 15, 16

*Wisconsin Cent. Ltd. v. United States*,
585 U.S. 274 (2018)....................9

**Statutes**

15 U.S.C. § 1 ....................5

15 U.S.C. § 15c .................... *passim*

15 U.S.C. § 15g ....................17

15 USC § 26 ....................5, 6

Hart-Scott-Rodino Antitrust Improvement Act of 1976,
Pub. L. 94-435, 90 Stat. 1394 (codified at 15 U.S.C. § 15c(a)(1))....................6

State Antitrust Enforcement Venue Act of 2021,
136 Stat. 4459 at 5970 (codified as amended at 28 U.S.C. § 1407(g).......... 11, 12

Tex. Bus. & Com. Code § 15.20(a) ....................15

Tex. Bus. & Com. Code §15.04....................16

**Other Authorities**

H.R. Rep. No. 90-1130 (1968)....................12

H.R. Rep. No. 94-499 (1976)....................6, 17

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

The issue in this appeal is whether an antitrust enforcement action brought by a State can be enjoined by a private settlement. In separate actions, the Appellant-Intervenors (the attorneys general of the District of Columbia, Kentucky, Maryland, New Jersey, and Washington) assert federal Sherman Act claims against the same Appellees in a quasi-sovereign capacity and state antitrust law claims in a sovereign capacity. The action below is a purely private consolidated litigation, also alleging the same federal Sherman Act claims and some of the same state antitrust claims as the State Appellant-Intervenors. The district court denied Appellant-Intervenors' motion to intervene and modify its injunction barring "any person or entity purporting to act or bring claims on behalf of" private settlement class members "from prosecuting, pursuing, maintaining, or enforcing any Released Claims . . . in any forum." Preliminary Approval Order, RE 1406, PageID ## 22818-22819; RE 1463, PageID ## 23990-23992.

The States of Texas, Tennessee, Alabama, Arkansas, Delaware, Florida, Idaho, Indiana, Iowa, Kansas, Louisiana, Michigan, Mississippi, Montana, Nebraska, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Tennessee, Utah, and West Virginia (collectively, "amici States") submit this brief in support of Appellant-Intervenors the District of Columbia, Kentucky, Maryland, New Jersey, and Washington to urge reversal of the

district court's decision. For the reasons explained by the Appellant-Intervenors, this Court should reverse the district court's denial of the motion to intervene and vacate the injunction in the district court's May 22, 2026 order to the extent it reaches claims or remedies asserted by the Appellant-Intervenors. *See* Appellants' Br. 23–32.

Amici States write separately to make three points.

*First*, private class action settlements do not extinguish State federal Sherman Act *parens patriae* claims. The Supreme Court has established that a State proceeding in a *parens patriae* capacity asserts "a quasi-sovereign interest *apart* from the interests of particular private parties." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601–02 (1982) ("*Snapp*") (emphasis added). The district court below did not apply *Snapp*. Instead, it concluded that "states' *parens patriae* claims duplicate class action monetary claims for damages and that *parens patriae* claims belong to class members rather than the states." RE 1463, PageID ## 23990-23992. This was in error, because *parens patriae* claims are grounded in States' quasi-sovereign interests, which are separate from any private interests. *See Snapp*, 458 U.S. at 601–02. They cannot be unilaterally released by a private class. Instead, the only impact of a private settlement is that any award would offset any duplicate damages award under a federal *parens patriae* claim.

This result for Sherman Act *parens patriae* claims for injunctive relief is confirmed by *Hawaii v. Standard Oil Co. of California*, in which the Supreme Court concluded that the "United States Government, the governments of each State, and any individual threatened with injury by an antitrust violation may all sue for injunctive relief against violations of the antitrust laws, and . . . they may theoretically do so *simultaneously* against the *same persons* for the *same violations*." 405 U.S. 251, 261 (1972) (emphases added).

And this result is confirmed for Sherman Act *parens patriae* claims for monetary relief by the authorizing statute itself, 15 U.S.C. § 15c, and its sub-sections. The district court's contrary conclusion would impermissibly render each surplusage.

*Second*, for State-law claims, to determine whether a state-law claim can be extinguished by a private settlement, the court must undertake a state-law-specific analysis to determine whether the state-law claim is sovereign and thus cannot be enjoined. *See California v. IntelliGender, LLC*, 771 F.3d 1169, 1176-182 (9th Cir. 2014) (after class action settlement, undertaking this analysis). The district court below erred by failing to do so before entering an injunction, necessitating reversal.

*Finally*, policy supports these legal arguments. Permitting private parties to extinguish States' *parens patriae* claims weakens antitrust enforcement and ultimately harms consumers

## INTERESTS OF AMICI CURIAE

Amici States have an interest in the "economic" "health and well-being" of their citizens. *Snapp*, 458 U.S. at 593. As part of that interest, amici States have considerable experience in promoting technology competition through federal *parens patriae* antitrust claims and through state-law antitrust claims. As the Supreme Court has explained, giving "State attorneys general the right to institute *parens patriae* suits on behalf of State residents" "was designed to enhance the effectiveness of antitrust enforcement on behalf of small consumers." *Illinois v. Abbott & Assocs, Inc.*, 460 U.S. 557, 573 n.29 (1983).

To highlight just a few examples: more than 25 years ago, a bipartisan coalition of States filed a *parens patriae* antitrust complaint against Microsoft, leading to a landmark decision and decree. *See New York v. Microsoft Corp.*, 209 F. Supp. 2d 132, 150-52 (D.D.C. 2002). In the 2010s, another bipartisan State coalition used federal *parens patriae* claims to sue Apple and electronic book publishers for antitrust violations, ultimately winning a verdict and settlement. *See In re Elec. Books Antitrust Litig.*, 14 F. Supp. 3d 525, 531–32 (S.D.N.Y. 2014). Most recently, a bipartisan group of States has brought state-law and federal *parens patriae* antitrust enforcement claims against Google related to the harm its digital platforms have caused to competition, innovation, and consumers. *See Texas v. Google LLC*, 764 F. Supp. 3d 500, 509 (E.D. Tex. 2025).

Based on this experience, amici States believe that the district court's decision undermines the States' *parens patriae* and state-law antitrust enforcement authority and, by extension, threatens proper antitrust enforcement.

Amici States file this brief to protect their businesses and residents from the economic harm that may result if the district court's decision is left to stand. The amici States file this brief under Federal Rule of Appellate Procedure 29(a).

## ARGUMENT

### I. States' Sherman Act *parens patriae* claims cannot be extinguished by private parties.

In this appeal, there is no dispute that some of the Intervenor-Appellants are asserting Sherman Act *parens patriae* claims—that is, federal antitrust claims brought under 15 U.S.C. §§ 15c and 26 to enforce 15 U.S.C. § 1. These *parens patriae* claims are grounded in quasi-sovereign interests, which are distinct from "private" interests. Because they are quasi-sovereign claims, Sherman Act *parens patriae* claims for injunctive relief cannot be extinguished by private parties. Likewise, the federal statutory scheme confirms that Sherman Act *parens patriae* claims for monetary relief also cannot be extinguished by private class settlements.

#### A. *States' Sherman Act* **parens patriae** *claims are grounded in quasi-sovereign interests and therefore cannot be extinguished by private class settlements.*

States can bring lawsuits in at least four capacities: "sovereign, quasi-sovereign, proprietary, or private." *Harrison v. Jefferson Par. Sch. Bd.*, 78 F.4th 765,

769 (5th Cir. 2023) (citing *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601–02 (1982) ("*Snapp*")).

The Supreme Court distinguishes between a State pursuing a "private" interest and a State pursuing a "quasi-sovereign interest." On the one hand, "a State may, for a variety of reasons, attempt to pursue the interests of a private party, and pursue those interests only for the sake of the real party in interest. Interests of private parties are obviously not in themselves sovereign interests, and they do not become such simply by virtue of the State's aiding in their achievement." *Snapp*, 458 U.S. at 602. In that case, "the State is no more than a nominal party." *Id.*

On the other hand, "quasi-sovereign interests stand apart" from "private interests pursued by the State as a nominal party." *Id.* While such interests are not reducible to an "exhaustive formal definition [or] a definitive list," "the health and well-being—both physical and economic—of [a State's] residents in general" clearly qualifies as quasi-sovereign. *Id.* at 607.

Thus, the Supreme Court and Congress have repeatedly concluded that Sherman Act *parens patriae* claims brought by the States—that is, federal antitrust claims brought under 15 U.S.C. §§ 15c and 26—are grounded in quasi-sovereign interests. *See Georgia v. Pennsylvania Railroad*, 324 U.S. 439, 443, 447 (1945) (recognizing Sherman Act *parens patriae* claim for injunctive relief); Hart-Scott-Rodino Antitrust Improvement Act of 1976, Pub. L. 94-435, 90 Stat. 1394 (codified

at 15 U.S.C. § 15c(a)(1)) (authorizing Sherman Act *parens patriae* claims for monetary relief); *see also* H.R. Rep. No. 94-499, at 9 (1976) (explaining that Hart-Scott-Rodino Act "extend[s]" reasoning from earlier Supreme Court cases); *see also Snapp*, 458 U.S. at 601–02 (in 1982, four years after Hart-Scott-Rodino Act, explaining State proceeding in a *parens patriae* capacity in federal court asserts a quasi-sovereign "interest apart from the interests of particular private parties."). In the technology context, numerous courts have agreed that States' federal antitrust claims are grounded in their unique *parens patriae* authority. *See New York v. Microsoft Corp.*, 209 F. Supp. 2d 132, 150-52 (D.D.C. 2002); *In re Elec. Books Antitrust Litig.*, 14 F. Supp. 3d 525, 531–32 (S.D.N.Y. 2014); *Texas v. Google LLC*, 764 F. Supp. 3d 500, 509 (E.D. Tex. 2025).

***B. Sherman Act* parens patriae *claims for injunctive relief cannot be extinguished by private parties.***

In light of this quasi-sovereign grounding, a State's *parens patriae* Sherman Act claim does not "duplicate" private or other governmental claims and cannot be extinguished by settlements of those claims. As the Supreme Court acknowledged in *Standard Oil* regarding injunctive relief for *parens patriae* claims, the "United States Government, the governments of each State, and any individual threatened with injury by an antitrust violation may all sue for injunctive relief against violations of the antitrust laws, and . . . they may theoretically do so *simultaneously* against the *same persons* for the *same violations*." 405 U.S. at 261 (emphases

added). Simply, the Supreme Court expressly contemplated the litigation scenario presented here: parallel suits brought by state attorneys general and private parties in various courts, all premised on the same conduct—defendants' anticompetitive practices. And the Supreme Court endorsed maintaining the States' *parens patriae* claims in this scenario. So too should this Court.

### *C. Sherman Act* **parens patriae** *claims for monetary relief cannot be extinguished by private parties.*

The Hart-Scott-Rodino amendment to the Clayton Act, passed four years after the Supreme Court's *Standard Oil* decision, also contemplates antitrust actions by multiple parties and expressly provides for "Actions by State attorneys general" for monetary relief for violations of the Sherman Act. *See* 15 U.S.C. § 15c(a)(1). Section 15c is even more explicit that a private class settlement cannot extinguish a Sherman Act *parens patriae* action in three ways, in response to *Standard Oil*. The recent State Antitrust Enforcement Venue Act of 2021 underlines this point.

*First*, Section 15c contemplates a procedure by which courts avoid awarding duplicative damages through offsets, rather than releases. Section 15c(a) directs courts "to exclude from the amount of monetary relief awarded" in a State action "any amount of monetary relief (A) which duplicates amounts which have been awarded for the same injury, or (B) which is properly allocable to (i) natural persons who have excluded their claims pursuant to subsection (b)(2) of this section, and (ii) any business entity." 15 U.S.C. § 15c(a)(1) (emphases added).

To illustrate: if an individual is injured in the amount of $200, both she and her State sue, and she settles her individual claim for $100, the State may continue its claim and seek the full $200 in relief, but the settlement "amount" of $100 would be set off from any subsequent award to the State.

The statute's use of the phrase "duplicate[] amounts which have been awarded," underlines that duplicative awards only offset a State's monetary relief, but do not extinguish its "claim." 15 U.S.C. § 15c(a)(1). Had Congress intended to convey that settlement awards extinguish a "claim," it could have said so, as it does in the very next phrase. *Id.* (also excluding amount "properly allocable to . . . natural persons who have excluded their claims"). "[D]ifferences in language like this convey differences in meaning." *Wisconsin Cent. Ltd. v. United States*, 585 U.S. 274, 279 (2018). Thus, Section 15c contemplates a procedure by which courts avoid awarding duplicative damages while still allowing a parallel State *parens patriae* claim to proceed.

*Second*, Section 15c(b) expressly provides for a procedure by which a private person may "exclude" her claims from the State action:

> **(b) Notice; exclusion election; final judgment**
>
> (1) In any action brought under subsection (a)(1) of this section [that is, by a State as *parens patriae* for monetary relief], the State attorney general shall, at such times, in such manner, and with such content as the court may direct, cause notice thereof to be given by publication. If the court finds that notice given solely by publication would deny due process of law to any person or persons, the court may direct further

> notice to such person or persons according to the circumstances of the case.
>
> (2) Any person on whose behalf an action is brought under subsection (a)(1) may elect to exclude from adjudication the portion of the State claim for monetary relief attributable to him by filing notice of such election with the court within such time as specified in the notice given pursuant to paragraph (1) of this subsection.
>
> (3) The final judgment in an action under subsection (a)(1) shall be res judicata as to any claim under section 15 of this title by any person on behalf of whom such action was brought and who fails to give such notice within the period specified in the notice given pursuant to paragraph (1) of this subsection.

15 U.S.C. § 15c(b) (emphases added). Section 15c(b) provides that, for an individual to exclude duplicate monetary relief, the State attorney general must first issue a notice of the State's action, and the person must then, consistent with that notice, file her exclusion election notice with the court that is overseeing the State's *parens patriae* action. If parties to private class actions were able to agree to exclude people from a State's *parens patriae* claim without following this statutory procedure, that would "render [this] entire subparagraph meaningless," which "refutes" the interpretation. *Pulsifer v. United States*, 601 U.S. 124, 143 (2024). So parties to private class actions cannot unilaterally agree to exclude claims from State *parens patriae* claims for monetary relief, as the parties attempt to do here.

*Third*, Section 15c explains that a State's *parens patriae* action cannot be settled by another court:

> (c) Dismissal or compromise of action
>
> An action under subsection (a)(1) shall not be dismissed or compromised without the approval of the court, and notice of any proposed dismissal or compromise shall be given in such manner as the court directs.

15 U.S.C. § 15c(c) (emphasis added). Unpacking the key language:

- "An action under subsection (a)(1)" is a federal antitrust "civil action in the name of [a] State, as *parens patriae* . . ., to secure monetary relief." 15 U.S.C. § 15c(a)(1).
- A "compromise" is a settlement. *See In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 673 (6th Cir. 2020).
- And not just any court can approve the settlement: it must be "the court" in which the *parens patriae* action is pending. *See Nielsen v. Preap*, 586 U.S. 392, 408 (2019) ("the" is "a function word ... indicat[ing] that a following noun or noun equivalent is definite or has been previously specified by context.") (quotation omitted).

Putting these words back together: by statute, a State's *parens patriae* action for monetary relief cannot be settled without the approval of the court in which the State's *parens patriae* action is pending. Again, any other construction is "refute[d]" because it would "render [this] entire subparagraph meaningless." *Pulsifer v. United*

*States*, 601 U.S. 124, 143 (2024). Private parties cannot settle a State's *parens patriae* action for monetary relief without the State.

Congress recently reaffirmed this point in enacting the State Antitrust Enforcement Venue Act of 2021. *See* 136 Stat. 4459 at 5970 (codified as amended at 28 U.S.C. § 1407(g)). There, Congress added State antitrust actions to the already-existing United States antitrust action exclusion from MDL consolidation. *See* 28 U.S.C. § 1407(g). But, as acknowledged by the original suggester of the MDL consolidation exclusion, government exclusion from MDL consolidation "may occasionally burden defendants because they may have to answer similar questions posed both by the Government and by private parties." H.R. Rep. No. 90-1130 (1968), at 8 (letter from Deputy Attorney General Ramsey Clark, January 7, 1966).

Each of these texts shows that Congress contemplated the litigation scenario presented here: parallel suits brought by States and private parties in various courts, premised on the same anticompetitive conduct. And each text shows Congress endorsed maintaining the States' *parens patriae* claims for monetary relief in this scenario. So too should this Court.

### ***D. The cases relied upon by the district court do not address* parens patriae *claims.***

The cases relied upon by the district court say no different because they do not address the quasi-sovereign *parens patriae* claims at issue here.

*First*, the district court relied on "the legal authority cited by the settling parties" for the idea that "states' *parens patriae* claims duplicate class action monetary claims for damages and that *parens patriae* claims belong to class members rather than the states." RE 1463, PageID ## 23990-23992 (citing "Doc. No. 1448-1 at 9–12").

But to make their argument, the settling parties repeatedly edited the text of decisions, inserting the words "*parens patriae*" where they had not existed. *See* RE 1448 at PageID ## 23570-23573. In one striking example, the court in *In re American Investors Life Insurance Co. Annuity Marketing. & Sales Practices Litig.,* expressly explained: "the issue of whether a *parens patriae* claim or restitution remedy may be foreclosed because of the release *is not currently before the Court*. . . . The attorneys' general law enforcement powers are not claims the plaintiffs have, and as such, the plaintiffs do not release any of these claims." 263 F.R.D. 226, 241 (E.D. Pa. 2009) (emphasis added). The other cases do not even use the words "*parens patriae*," or do not use it in the relevant context. *See California v. IntelliGender, LLC*, 771 F.3d 1169, 1179 (9th Cir. 2014) (no use of "*parens patriae*"); *In re Am. Invs. Life Ins. Co. Annuity Mktg. & Sales Pracs. Litig*., 2013 WL 3463503, at *8 (E.D. Pa. July 10, 2013); *Esslinger v. HSBC Bank Nev., N.A.*, 2012 WL 5866074, at *7 n.2 (E.D. Pa. Nov. 20, 2012) (same); *New Mexico ex rel. King v. Cap. One Bank (USA) N.A.*, 980 F. Supp. 2d 1346, 1351 (D.N.M. 2013) (no

mention that State had brought claim in *parens patriae* capacity); *see also In re Generic Pharms. Pricing Antitrust Litig.*, 2025 WL 2777570, at *3 (E.D. Pa. Sep. 26, 2025) (no discussion that settlement used term "*parens patriae*" or "on behalf of" consumers).

Likewise with *In re Baldwin-United Corp.*, 770 F.2d 328 (2d Cir. 1985), a case also relied on by the district court below to conclude that the district court was empowered to enter the injunction. RE 1463, PageID ## 23992. *Baldwin* too expressly distinguished the claim it was considering from a *parens patriae* claim: "when the state merely asserts the personal claims of its citizens, it is not the real party in interest and *cannot claim parens patriae standing* . . . . [and] a state's sovereign immunity is not a bar . . . . [Here], the injunction affects conduct outside the protection of the states' sovereign immunity." 770 F.2d at 341 (emphasis added). So *Baldwin* also gives no guidance about a federal court's ability to enjoin federal *parens patriae* claims brought by States.

## II. Courts contemplating an injunction of state-law claims must undertake a state-law-remedy by state-law-remedy analysis.

In addition to the federal antitrust Sherman Act, the States have their own state antitrust laws. Under their state antitrust laws, State attorneys general may seek additional unique forms of relief, including civil penalties, disgorgement, and injunctive relief, as authorized by statute or state common law. For example, Section 15.20(a) of Texas's antitrust statute authorizes civil fines payable "to the state" in an

amount not to exceed $300,000 for individuals, or the following amounts for business entities:

> (A) $3 million, if the lesser of the person's assets or market capitalization is less than $100 million;
>
> (B) $20 million, if the lesser of the person's assets or market capitalization is at least $100 million but less than $500 million; or
>
> (C) $30 million, if the lesser of the person's assets or market capitalization is $500 million or more.

Tex. Bus. & Com. Code § 15.20(a)(2)(A)–(C); *see also* Appellants' Br. 24 (collecting other example statutes).

When States enforce these state antitrust remedies, they often do so in their "sovereign" capacities. States' "sovereign" interests include "the power to create and *enforce* a legal code, both civil and criminal." *Snapp*, 458 U.S. at 601. So States sue in their separate capacity as "sovereign enforcers," *Connecticut v. Sandoz, Inc.*, 820 F. Supp. 3d 125, 144, 146, 148 (D. Conn. 2026), when the purpose of their remedies is not to "compensate," but instead to "punish and deter." *See Sec. & Exch. Comm'n v. Jarkesy*, 603 U.S. 109, 125 (2024); *Connecticut*, 820 F. Supp. 3d at 146 (disgorgement's purpose is not "primarily to compensate victims," but instead "deterring" and "stripping wrongdoers of their ill-gotten gains"); *Texas v. Google LLC*, 787 F. Supp. 3d 357, 427 (E.D. Tex. 2025) (concluding that Texas civil penalties' purpose is not to compensate, but to punish and deter).

If a State asserts a state-law antitrust claim in its sovereign capacity, that sovereign claim cannot be released or enjoined by private class settlements. For example, in *IntelliGender,* the Ninth Circuit affirmed the denial of a defendant's motion to enjoin California's "enforcement action in its entirety" following a private class settlement of unfair competition and false advertising claims. 771 F.3d at 1177. That court reasoned it was "impossible" for a "CAFA class action settlement" to "bind the State in its sovereign capacity." *Id.*; *see also E.E.O.C. v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 460 (6th Cir. 1999) ("one individual cannot, by waiving her statutory right to vindicate her own interest, waive the statutory right of a federal sovereign to vindicate the public interest unless the government agrees to such waiver").[1]

Thus, before a court enjoins any state-law claims brought by States following a private settlement, the court must undertake a state-law-remedy-by-state-law-remedy analysis to determine whether the private settlement could extinguish the state-law claim or whether the state-law claim is sovereign and unaffected by a settlement, similar to courts' claim-by-claim analysis of state-law capacity for the

[1] While the Ninth Circuit did find in *IntelliGender* that privity between California and the private parties precluded California's restitution claims, it did not analyze California's separate sovereign interests in its restitution claim which the private parties could not assert and therefore for which there could be no privity. *See id.*

purposes of evaluating entitlement to jury trial. *See, e.g.*, *Google,,* 787 F. Supp. 3d at 405 (analyzing state interests at the state-law-remedy level to decide jury title entitlement).

And, in light of many states' harmonization statutes, in the absence of express statute or common law guidance, the default should be for a court to look back to the federal scheme explained above. *See, e.g.*, Tex. Bus. & Com. Code §15.04 ("The provisions of the [Texas Free Enterprise and Antitrust Act] . . . shall be construed in harmony with federal judicial interpretations of comparable federal antitrust statutes . . . .").

Even setting aside any other arguments about the appropriateness of an injunction here, the district court below erred by failing to undertake this state-law-remedy-by-state-law-remedy analysis before entering the injunction. RE 1463, PageID ## 23990-23992.

### III. Permitting private parties to extinguish States' *parens patriae* claims weakens antitrust enforcement and ultimately harms consumers.

As discussed above, congressional intent is clear that States' *parens patriae* authority under Section 15c withstands resolution of corresponding private consumer claims. Indeed, Congress explicitly designed the Hart-Scott-Rodino Act to promote "in-house" State antitrust enforcement. H.R. Rep. No. 94-499, at 17–18; *see* 15 U.S.C. § 15g. Sovereign state-law claims, too, may survive.

There is a strong policy reason for this design: "to enhance the effectiveness of antitrust enforcement on behalf of small consumers." *Illinois v. Abbott & Associates, Inc.*, 460 U.S. 557, 573 n.29 (1983). Permitting antitrust defendants to extinguish State enforcement actions—including Sherman Act *parens patriae* damages actions—with weak, private settlements would encourage gamesmanship and a "race-to-the-bottom" to preclude other claims, an outcome this Court has warned against. *See Grainger v. Ottawa County*, 90 F.4th 507, 512 n.5 (6th Cir. 2024) (describing this dynamic as a "reverse auction"). That concern is particularly acute in this antitrust context, in which private class actions face the "the difficulty of achieving class certification of consumer actions and the complexity of measuring and distributing damages." *See Illinois*, 460 U.S. at 573 n.29. Thus, when passing the Hart-Scott-Rodino Act, Congress designed the statute to "remedy these problems" through State enforcement by exempting State suits "from the class action requirements of Rule 23" and "allow[ing] damages in these suits to be computed through aggregation techniques." *Id.* A rule that would let private counsel release a State's damages claim without its assent would undermine these express Congressional goals.

And, to be sure, while Congress intended for parallel litigation, the prohibition of double recovery also deters overzealous follow-on litigation by the States. If a parallel, private litigation resulted in robust damages to consumers, a State would

have little incentive to continue to assert damages in its own *parens patriae* claim, as the time and costs for doing so would outweigh any marginal benefit. But if a private litigation resulted in (in the State's view) a weak settlement, the attorney general serves as an important backstop to protect consumers.

## CONCLUSION

For these reasons, amici States respectfully urge the Court to reverse and remand and expressly reiterate that private settlements cannot release State Sherman Act *parens patriae* claims and that courts contemplating an injunction of State state-law claims must undertake a state-law-remedy by state-law-remedy analysis.

Respectfully submitted,

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

WILLIAM D. WASSDORF
Deputy Attorney General
for Civil Litigation

THOMAS D. YORK
Chief, Antitrust Division

/s/ *Katherine S. Dannenmaier*
KATHERINE S. DANNENMAIER
Assistant Attorney General

Texas Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 803-6803
Fax: (512) 473-8301
thomas.york@oag.texas.gov
kay.dannenmaier@oag.texas.gov

*Additional counsel listed on next page*

JONATHAN SKRMETTI
Attorney General

/s/ *Madeline W. Clark*
MADELINE W. CLARK
Solicitor General

DAVID MCDOWELL
Deputy Attorney General

Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202
Telephone: (615) 253-0144
Madeline.Clark@ag.tn.gov

.

September 29, 2026

**Additional Counsel**

STEVE MARSHALL
*Attorney General*
State of Alabama

TIM GRIFFIN
*Attorney General*
State of Arkansas

KATHLEEN JENNINGS
*Attorney General*
State of Delaware

JAMES UTHMEIER
*Attorney General*
State of Florida

RAÚL R. LABRADOR
*Attorney General*
State of Idaho

THEODORE E. ROKITA
*Attorney General*
State of Indiana

BRENNA BIRD
*Attorney General*
State of Iowa

KRIS W. KOBACH
*Attorney General*
State of Kansas

LIZ MURRILL
*Attorney General*
State of Louisiana

DANA NESSEL
*Attorney General*
State of Michigan

LYNN FITCH
*Attorney General*
State of Mississippi

AUSTIN KNUDSEN
*Attorney General*
State of Montana

MICHAEL T. HILGERS
*Attorney General*
State of Nebraska

JEFF JACKSON
*Attorney General*
State of North Carolina

DREW WRIGLEY
*Attorney General*
State of North Dakota

ANDY WILSON
*Attorney General*
State of Ohio

GENTNER DRUMMOND
*Attorney General*
State of Oklahoma

DAN RAYFIELD
*Attorney General*
State of Oregon

DAVID W. SUNDAY, JR.
*Attorney General*
Pennsylvania

ALAN WILSON
*Attorney General*
State of South Carolina

MARTY JACKLEY
*Attorney General*
State of South Dakota

DEREK BROWN
*Attorney General*
State of Utah

JOHN B. MCCUSKEY
*Attorney General*
State of West Virginia

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 29(a)(5) because the brief contains 4,336 words, excluding exempted parts. This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

*/s/ Madeline W. Clark*
MADELINE W. CLARK

## CERTIFICATE OF SERVICE

I certify that on September 29, 2026, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the CM/ECF system, which will send notification of such filing to any counsel of record.

*/s/ Madeline W. Clark*
MADELINE W. CLARK